UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NORTHWEST IRONWORKERS HEALTH & SECURITY FUND, *et al.*, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br>RODBUSTERS, INC., <br><br>　　　　Defendant. | NO. CV-04-383-RHW <br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Plaintiffs' Motion for Summary Judgment and Motion for Summary Judgment of Dismissal of Defendant's Counterclaim (Ct. Rec. 42). A hearing was held on September 25, 2006. Michael Korpi appeared on behalf of Plaintiffs; Greg Devlin appeared on behalf of Defendant. This action arose out of questions about Defendant's payment of employee benefits for the past several years. Plaintiff Trusts have audited Defendant's records to determine whether appropriate benefits have been paid, and Defendant has counterclaimed for damages in response due to Plaintiffs' interference with Defendant's ability to transact business. In the current motion, Plaintiffs are asking for summary judgment in the amount of $590,841.71, as well as attorney's fees. Plaintiffs also request summary judgment dismissal of Defendant's counterclaim.

## STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT *1

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," then the trial court should grant the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS

The following facts are undisputed unless otherwise noted.

Plaintiffs consist of several trusts that are tax-qualified, jointly administered union-management employee benefit trust funds, organized and operated in accordance with the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and created under § 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c). Defendant Rodbusters, a corporation providing rebar services, entered into a Master Labor Agreement ("MLA") and Independent Agreement with Plaintiffs and Local Union No. 14 in 1997. Those agreements were in effect until 2002. Rodbusters did not sign the renewal MLA for the period of 2002 to 2005, but it did agree to and sign the MLA in effect from 2005 to 2008. The first and subsequent MLAs all include an "evergreen clause" which states the agreement "shall remain in force from year to year" unless proper notice is given. (Piksa Decl, Ex. A, art. 23). The parties have continuously performed under the terms of the MLA except for a short period discussed below.

Defendant Rodbusters is required by the applicable collective bargaining

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT *2

agreement to make monthly employee benefit contributions to the Plaintiffs, which then provide medical, dental, retirement, and other benefits to eligible employees and their dependents. The collective bargaining agreement between Defendant and the Ironworkers District Council of the Pacific Northwest, and its affiliated Local No. 14, requires that a fixed dollar amount for each hour worked by employees under the agreement be reported and paid to the Plaintiffs. These payments are due by the fifteenth day of the month following the month in which the hours were worked.

The MLA specifically states Defendant "shall pay monthly in accordance with the Trust Agreement, the sums as indicated in Schedule 'A' for all hours compensable under this Agreement for the purpose of providing Health and Security benefits for all eligible Iron Workers covered by this Agreement." (Piksa Decl., Ex. A, art. 9, §A.7(D)). The Iron Workers' Independent Agreement, executed by Defendant, states the Defendant "agrees to pay all monetary contributions for each hour paid for or worked by any person performing work covered by the [MLA] to all of the Trust Funds specified in the [MLA][.]" (Id., Ex. D).

Plaintiffs state Defendants failed to make timely contributions to the Trusts for the audit period of January 2000 through June 2005. Plaintiffs state Defendant's unpaid contributions for the audit period of January 2000 through June 2005 amount to $280,997.73; liquidated damages for the same period total $37,920.91; and interest through June 15, 2006, is $206,550.70. The accounting fee to date is $65,372.37.

Defendant alleges that Plaintiffs' accounting firm performed its first audit in 2003, and that it resulted in a finding that Defendant owed $22,962.20 in past trust contributions. In that audit, "shop time" was classified as non-reportable hours. Defendant's CPA evaluated the same reports and determined Defendant actually overpaid benefits. The second audit in 2005, the results of which are recited

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT *3

above, classified "shop time" as reportable hours. Defendant disputes this characterization of "shop time" hours. Defendant's CPA has concluded that practically all non-reported, and thus disputed hours are "shop time" or subsistence hours. Accordingly, the results of Defendant's audit vary greatly from those of Plaintiffs' audit, but this difference is due solely to their different characterization of reportable hours.

Plaintiffs state Defendant made no contributions whatsoever from June 15, 2004, through January 6, 2005. Defendant does not dispute this fact. Because of this alleged delinquency, Plaintiffs attempted to file mechanics' liens on three of Defendant's projects on January 7, 2005. Plaintiffs sent out a fourth lien notice on January 10, 2005. On January 7, 2005, Defendant issued twelve checks in payment of its delinquent contributions for the seven-month period. On January 31, 2005, and February 1, 2005, Plaintiffs' counsel sent notices to the general contractors on the four affected projects stating that the liens were being either released or withdrawn. Two of these notices, sent to the projects on which the liens were withdrawn, also stated in part "[p]lease be advised, however, that the Trusts reserve the right to file lien claims on your project if the pending audit of Rodbusters' payroll records discloses unpaid contributions due and the employer thereafter refuses to pay." (Carlson Decl., Exs. R & S). Defendant claims these letters served no other purpose than to damage its legitimate business expectations within the community. Defendant has presented no evidence beyond a conclusory statement from its vice president that shows its business expectations were in fact damaged because of the letters. (Tanksley Decl., ¶¶ 9-11).

## **DISCUSSION**

There are two issues before the Court: (1) whether "shop time" and subsistence hours are reportable under the MLA and Individual Agreement between Plaintiffs and Defendant; and (2) whether the letters sent by Plaintiffs

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT *4

constitute tortious interference with Defendant's legitimate business expectations.[1] Both of these issues are questions of law and therefore shall be resolved through summary judgment.

**A.     Split-Time Rule**

The Court must determine, based on the MLA and Individual Agreement, whether an employer must pay trust fund contributions for hours worked on tasks which are not covered by the Agreements. This legal issue is well-settled within the Ninth Circuit. Through a series of cases, the Ninth Circuit has developed the rule that where an employee splits his time between a position or tasks covered by the collective bargaining agreement and a position not covered, the employer must contribute for all the hours the employee works or for which he is paid. *E.g.*, *Operating Engineers Pension Trusts v. B&E Backhoe, Inc.*, 911 F.2d 1347, 1352 n.8, 1354 (9th Cir. 1990); *Operating Engineers Pension Trusts v. A-C Co.*, 859 F.2d 1336, 1341 (9th Cir. 1988); *Kemmis v. McGoldrick*, 706 F.2d 993, 997 (9th Cir. 1983); *Waggoner v. Dallaire*, 649 F.2d 1362, 1369 (9th Cir. 1981).

The Ninth Circuit in adopting this rule effectuated the policy behind the typical language found in collective bargaining agreements like the one in this

---

[1] Defendant also belatedly raised an argument at the hearing that it was not bound by the MLA between 2002 and 2005 because it did not sign the governing MLA for that time period. The Court finds the evergreen clause in the 1997 MLA obligates the parties without proper termination, and the parties' continued compliance with its terms, aside from the seven month period in 2004-2005, manifests their understanding of this obligation. *See Eastern Enters. v. Apfel*, 524 U.S. 498, 510 (1998) (discussing the effect of the evergreen clause in the 1974 National Bituminous Coal Wage Agreement); *see also Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Svc., Inc.*, 870 F.2d 1148, 1156 (7th Cir. 1989) (termination notice must comply with terms of CBA to be effectual; otherwise contract continues under evergreen clause).

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT *5

case:

> to minimize the employers' ability to manipulate accounting records to make it appear that employees were not performing MLA work. It would place an "undue burden on most trust funds to require them to perform the investigatory accounting work necessary to ensure the accuracy of employer contributions where employers purpose to split their employees' time between bargaining unit and nonbargaining unit work."

*B&E Backhoe*, 911 F.2d at 354 (quoting *A-C Co.*, 859 F.2d at 1342).

Defendant attempts to distinguish the contribution clause of the Iron Workers' MLA and Independent Agreement at issue from the language considered in the contracts in these cases. It argues that the MLA refers to only the *hours* compensable under the Agreement, not to the employees covered by the Agreement. Defendant also points out the language in the Independent Agreement discussing the contributions "for each *hour* paid for or worked by any person *performing work covered by* the [MLA][.]" Defendant asserts this language is not ambiguous, and that the ambiguity in the collective bargaining agreements considered by the Ninth Circuit was the basis for its split-time rule.

Defendant misconstrues the basis of the Ninth Circuit's reasoning, as illustrated in a recent unpublished decision that forecloses Defendant's argument: "We have applied the split-time rule in a variety of contexts and stated that '[t]he overriding federal policy is best effectuated if collective bargaining agreements are interpreted and enforced in a uniform manner.'" *Bd. of Trustees of Cement Masons & Plasterers Health & Welfare Trust v. Whitewater Engineering Corp.*, 64 Fed. Appx. 39, 40 (9th Cir. 2003) (quoting *Kemmis*, 706 F.2d at 997). The court went on to find the collective bargaining agreement in that case did not appreciably differ from those the Circuit has previously considered and, thus, the split-time rule applied. *Id*.

The Ninth Circuit's reasoning in *B&E Backhoe* likewise supports the conclusion that the split-time rule applies to all collective bargaining agreements with similar language. The court there explained that a "collective bargaining

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT *6

agreement is not governed by the same principles of interpretation applicable to private contracts." *B&E Backhoe*, 911 F.2d at 1352.  Unlike private contracts, a collective bargaining agreement is

> a generalized code to govern a myriad of cases and parties, [that] calls into being a new common law of a particular industry or plant, and cannot be interpreted without considering the scope of other related collective bargaining agreements as well as the practice, usage and custom pertaining to all such agreements.

*Id.* (citing *Transportation-Communication Employees Union v. Union Pac. R.R.*, 385 U.S. 157, 160-61 (1966)).

A review of Ninth Circuit case law in this area clearly establishes that the practice, usage and custom pertaining to collective bargaining agreements in this area is that hours worked or paid for non-covered tasks are reportable in addition to those hours worked or paid for covered tasks. *See, e.g.*, *id.* at 354.  Moreover, the language of the MLA at issue in this case is very similar to the language found in the collective bargaining agreements discussed in the Ninth Circuit's cases.

Here, the MLA states Defendant "shall pay" benefits for "all hours compensable under this Agreement for the purpose of providing Health and Security benefits for all eligible Iron Workers covered by this Agreement."  The Independent Agreement states Defendant shall make contributions "for each hour paid for or worked by any person performing work covered by the [MLA][.]"  The agreements examined in the string of Ninth Circuit cases include only slightly different language to that in the agreements in the case at hand.  *E.g.*, *B&E Backhoe*, 911 F.2d at 1349 (MLA required employers to pay contributions for "'each and every hour worked or paid' to their employees who perform any work covered by the MLA"); *Kemmis*, 706 F.2d at 995 (agreement obligates employer to make contributions "for 'hours worked by (or paid) each employee under this Agreement'").  The similarity of language and the Ninth Circuit's practice of enforcing federal policy by interpreting and enforcing collective bargaining agreements in a uniform manner dictates the Court find the split-time rule applies

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT *7

in this case. *Accord Operating Engineers' Trust Funds v. Kinores*, 902 F. Supp. 1201, 1204-05 (D. Haw. 1995).

The Ninth Circuit's interpretation of the various collective bargaining agreements in the cases cited *supra* controls this Court's interpretation of the MLA and Independent Agreement here. The language in those agreements therefore "creates a conclusive presumption that an employer must contribute to the trust funds for all hours worked by a split-time employee, including hours spent performing tasks not covered by the agreement." *Id*. at 1205. Plaintiffs' Motion for Summary Judgment for their claims is granted.

**B.    Tortious Interference**

Defendant asserts a counterclaim against Plaintiffs for tortious interference with business expectancies. Under Washington law, a claim for tortious interference with a business expectancy requires five elements:

> (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

*Leingang v. Pierce County Medical Bureau, Inc.*, 131 Wash.2d 133, 157 (1997). Plaintiffs assert Defendant cannot prove the fourth element—interference for an improper purpose or through improper means. Therefore, Defendant's counterclaim must be dismissed as a matter of law. Defendant argues that regardless of the purpose or means by which Plaintiffs filed liens against Defendant's contracts, their correspondence mentioning the possibility of future delinquencies to local contractors constitutes interference by improper means.

"Exercising in good faith one's legal interests is not improper interference." *Id*. Certainly Plaintiffs were exercising their legal interests when they filed the liens against Defendant's interests. The issue is whether the letters sent notifying the contractors that the liens were withdrawn were for an improper purpose—to injure future relationships between Defendant and local contractors. Plaintiffs state

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT *8

1  the disputed language² in the letters was a lawful reminder of Plaintiffs' legal
2  rights. Defendant submits the letters were improper when compared to the
3  industry standard.³ However, Defendant does not provide any examples of
4  industry standard for comparison.

5        The Washington Supreme Court has stated that interference may be
6  "'wrongful' by reason of a statute or other regulation, or a recognized rule of
7  common law, or an established standard of trade or profession." *Pleas v. City of*
8  *Seattle*, 112 Wash.2d 794, 804 (1989); *see also Newton Ins. Agency & Brokerage,*
9  *Inc. v. Caledonian Ins. Group, Inc.*, 114 Wash. App. 151, 158 (2002). Often,
10 whether interference was improper is a question for the trier of fact. *Newton Ins.*
11 *Agency & Brokerage, Inc.*, 114 Wash. App. at 158-59. However, under certain
12 circumstances, "'identifiable standards of business ethics or recognized community
13 customs as to acceptable conduct' have developed, such that 'the determination of
14 whether the interference was improper should be made as a matter of law, similar
15 to negligence per se.'" *Id.* at 159 (quoting Restatement (Second) of Torts § 767,
16 cmt. 1).

17       Here, Plaintiffs sent a letter informing local contractors that liens formerly
18 placed on jobs were withdrawn or removed. These letters therefore had a lawful
19 purpose. Defendant objects to a portion of those letters that references Plaintiffs'
20 legal right to re-file a lien if Defendant again does not live up to its contractual
21 obligation. There is no evidence that Plaintiffs included this language for an

---

² The letters stated "Please be advised, however, that the Trusts reserve the right to file lien claims on your project if the pending audit of Rodbusters' payroll records discloses unpaid contributions due and the employer thereafter refuses to pay." (Carlson Decl., Exs. R & S).

³ Defendant also insinuates that Plaintiffs' actions may have been motivated at least in part by one of its competitors who sits on Plaintiffs' board. However, this is simply a conclusory statement and consists of mere speculation.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT *9

improper purpose beyond Defendant's suggestion that it was not industry standard and Defendant's claim, without supporting evidence, that it resulted in damages.

Plaintiffs have carried their burden under Rule 56(c); therefore Defendant must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Defendant must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 325.

Viewing all the evidence regarding Defendant's counterclaim in a light most favorable to Defendant and drawing all reasonable inferences in Defendant's favor, the Court finds Plaintiffs' inclusion of the disputed language in its letter notifying the contractors of its withdrawal of the liens was a good faith exercise of their legal rights. Defendant has supplied nothing more than conjecture in support of its theory that there is a genuine issue of fact as to improper purpose. Therefore, the inclusion of the disputed language in the letters could not, as a matter of law, have been for an improper purpose. Additionally, Defendant has presented no evidence beyond conclusory statements that it has actually suffered damage to its business expectancies as a result of these letters. Therefore, the Court grants this portion of Plaintiffs' motion for summary judgment as well.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Summary Judgment (Ct. Rec. 42) is **GRANTED**.

2. All pending motions are **DENIED as moot**.

3. The telephonic pretrial conference seton September 28, 2006, is **stricken**. The bench trial set on October 10, 2006, is **stricken**.

4. The District Court Executive is directed to **ENTER JUDGMENT** in favor of Plaintiffs in the amount of $590,841.71.

5. Plaintiffs shall file a motion for attorney's fees on or before thirty (30) days after entry of this Order and note it for hearing in accordance with the Local Rules. Defendant shall respond in accordance with the Local Rules.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT *10

1 **IT IS SO ORDERED.** The District Court Executive is directed to enter this
2 Order and forward copies to counsel.
3       **DATED** this 28th day of September, 2006.
4                           *s/ Robert H. Whaley*

                    ROBERT H. WHALEY
              CHIEF UNITED STATES DISTRICT JUDGE

Q:\CIVIL\2004\Northwest Ironworkers\grant.sj.ord.wpd

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT *11